**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Pending) |

**DECLARATION OF JOHN J. RAY III IN SUPPORT OF**
**CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

I, John J. Ray III, hereby declare under penalty of perjury as follows:

1.      I am the Chief Executive Officer of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), having accepted this position in the early morning hours of November 11, 2022.  I am administering the interests and affairs of the Debtors from my offices in the United States.

2.      My first official act in these roles was to authorize the chapter 11 filings of the Debtors and the commencement of the above-captioned chapter 11 cases (the "Chapter 11 Cases").

3.      Since my appointment, I have worked around the clock with teams of professionals at Alvarez & Marsal, Sullivan & Cromwell, Nardello & Co., Chainalysis, Kroll and a confidential cybersecurity firm, to secure the assets of the Debtors wherever located, to identify reliable books and records, to assemble the information necessary to provide to this Court, and to respond to numerous inquiries from multiple regulators and government authorities including the

---

[1]     The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

U.S. Commodity Futures Trading Commission ("<u>CFTC</u>"), the U.S. Attorney's Office for the Southern District of New York, the U.S. Securities and Exchange Commission ("<u>SEC</u>"), and the U.S. Congress, among others.

4.       I have over 40 years of legal and restructuring experience.  I have been the Chief Restructuring Officer or Chief Executive Officer in several of the largest corporate failures in history.  I have supervised situations involving allegations of criminal activity and malfeasance (Enron).  I have supervised situations involving novel financial structures (Enron and Residential Capital) and cross-border asset recovery and maximization (Nortel and Overseas Shipholding).  Nearly every situation in which I have been involved has been characterized by defects of some sort in internal controls, regulatory compliance, human resources and systems integrity.

5.       Never in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced, unsophisticated and potentially compromised individuals, this situation is unprecedented.

6.       These Chapter 11 Cases have five core objectives:

(a)       **Implementation of Controls**:  the implementation of accounting, audit, cash management, cybersecurity, human resources, risk management, data protection and other systems that did not exist, or did not exist to an appropriate degree, prior to my appointment;

(b)       **Asset Protection & Recovery**:  the location and security of property of the estate, a substantial portion of which may be missing or stolen;

(c)       **Transparency and Investigation**:  the pending, comprehensive, transparent and deliberate investigation into claims against Mr. Samuel Bankman-Fried, the other co-founders of the Debtors and third parties, in

coordination with regulatory stakeholders in the United States and around the world;

(d)  **Efficiency and Coordination**:  cooperation and coordination with insolvency proceedings of subsidiary companies in other jurisdictions; and

(e)  **Maximization of Value**:  the maximization of value for all stakeholders through the eventual reorganization or sale of the Debtors' complex array of businesses, investments and digital and physical property.

These proceedings in the District of Delaware are the appropriate means to accomplish each of these objectives.

7.    Except as otherwise indicated herein, all facts set forth in this declaration (the "Declaration") are based on my personal knowledge, my review of relevant materials in the Debtors' files or my opinion based on my experience, knowledge and information concerning the Debtors' operations and financial affairs.  I am over the age of 18 and authorized to submit this Declaration on behalf of each of the Debtors.

8.    For the reasons explained below, the Debtors expect to provide supplemental declarations as to the subject matter of this Declaration in connection with future motions as more information becomes available to the Debtors, stakeholders and the Court.

## I.    THE PREPETITION DEBTORS

### A.    Corporate Organization and Identification of Four Silos

9.    For purposes of managing the Debtors' affairs, I have identified four groups of businesses, which I refer to as "Silos."  These Silos include:  (a) a group composed of Debtor West Realm Shires Inc. and its Debtor and non-Debtor subsidiaries (the "WRS Silo"), which includes the businesses known as "FTX US," "LedgerX," "FTX US Derivatives," "FTX US Capital Markets," and "Embed Clearing," among other businesses; (b) a group composed of Debtor Alameda Research LLC and its Debtor subsidiaries (the "Alameda Silo"); (c) a group composed of Debtor Clifton Bay Investments LLC, Debtor Clifton Bay Investments Ltd., Debtor

-3-

Island Bay Ventures Inc. and Debtor FTX Ventures Ltd. (the "<u>Ventures Silo</u>"); and (d) a group composed of Debtor FTX Trading Ltd. and its Debtor and non-Debtor subsidiaries (the "<u>Dotcom Silo</u>"), including the exchanges doing business as "FTX.com" and similar exchanges in non-U.S. jurisdictions.  These Silos together are referred to by me as the "FTX Group."

10.     Each of the Silos was controlled by Mr. Bankman-Fried.[2]  Minority equity interests in the Silos were held by Zixiao "Gary" Wang and Nishad Singh, the co-founders of the business along with Mr. Bankman-Fried.  The WRS Silo and Dotcom Silo also have third party equity investors, including investment funds, endowments, sovereign wealth funds and families.  To my knowledge, no single investor other than the co-founders owns more than 2% of the equity of any Silo.[3]

11.     The diagram attached as <u>Exhibit A</u> provides a visual summary of the Silos and the indicative assets in each Silo.  <u>Exhibit B</u> contains a preliminary corporate structure chart.  These materials were prepared at my direction based on information available at this time and are subject to revision as our investigation into the affairs of the FTX Group continues.

**B.     The WRS Silo**

12.     The WRS Silo includes FTX US, an exchange for spot trading in digital assets and tokens.  FTX US was founded in January 2020.  FTX US is available to U.S. users

---

[2]     To my knowledge, Mr. Bankman-Fried owns (a) directly, approximately 53% of the equity in Debtor West Realm Shires Inc.; (b) indirectly, approximately 75% of the equity in Debtor FTX Trading Ltd.; (c) directly, approximately 90% of the equity in Debtor Alameda Research LLC; and (d) directly, approximately 67% of the equity in Clifton Bay Investments LLC.

[3]     Based on the information provided to me, the only Debtors that have received third party equity investments are Debtor FTX Trading Ltd. (Dotcom Silo) and Debtor West Realm Shires Inc. (WRS Silo).  To my knowledge, (a) approximately 25% of the equity in Debtor FTX Trading Ltd. is owned by a dispersed group of approximately 600 third party equity investors and (b) approximately 22.25% of the equity in Debtor West Realm Shires Inc. is owned by a dispersed group of approximately 570 third party equity investors.  FTX Trading Ltd also acquired 51% of Blockfolio, Inc. in 2020, with the remaining 49% of Blockfolio, Inc. owned by the original shareholders.

and, according to statements by Mr. Bankman-Fried, had approximately one million users as of August 2022. FTX US's spot exchange is registered with the Department of the Treasury (via the Financial Crimes Enforcement Network) as a money services business and holds a series of state money transmission licenses in the United States.

13.    The WRS Silo also owns 100% of the equity interests in the LedgerX business, which is operated by non-Debtor LedgerX LLC (d/b/a FTX US Derivatives) ("LedgerX"). LedgerX offers futures, options, and swaps contracts on digital assets and other commodities to both U.S. and non-U.S. persons. LedgerX operates with licenses from the CFTC. Based on the information that I have reviewed at this time, LedgerX is solvent.

14.    The WRS Silo also owns 100% of the equity interests in non-Debtor FTX Capital Markets LLC, which is an SEC-registered broker-dealer. Based on the information that I have reviewed at this time, FTX Capital Markets LLC is solvent.

15.    The WRS Silo also owns 100% of the equity interests in non-Debtor Embed Financial Technologies Inc., as well as its wholly-owned non-Debtor subsidiary Embed Clearing LLC, which operates as a securities clearing firm and is an SEC-registered broker-dealer. Based on the information that I have reviewed at this time, each of these non-Debtor entities is solvent.

16.    The WRS Silo also owns 100% of the equity interests in FTX Value Trust Company, a South Dakota Trust Company, which provides custodial services. Based on the information that I have reviewed at this time, this non-Debtor company is solvent.

17.    The WRS Silo also owns 100% of other Debtor and non-Debtor companies operating miscellaneous businesses, such as video game development and a market place for trading non-fungible tokens. Finally, the WRS Silo has made loans and investments,

including a loan of FTT tokens to BlockFi Inc. in a principal amount of FTT tokens valued at $250 million as of September 30, 2022.

18.     I have been provided with an unaudited consolidated balance sheet for the WRS Silo as of September 30, 2022, which is the latest balance sheet available.  The balance sheet shows $1.36 billion in total assets as of that date.  However, because this balance sheet was produced while the Debtors were controlled by Mr. Bankman-Fried, I do not have confidence in it, and the information therein may not be correct as of the date stated.

19.     The chart below summarizes certain information regarding the WRS Silo's consolidated assets as reflected in the September 30, 2022 balance sheet:

| WRS Silo Consolidated Assets as of September 30, 2022 | |
| --- | --- |
| *Current Assets* | |
| Cash and Cash Equivalents | $144,207 |
| Restricted Cash | $267,738 |
| U.S. Dollar Denominated Stablecoins | $68,035 |
| Customer Custodial Funds | $102,225 |
| Accounts Receivable | $2,978 |
| Accounts Receivable, Related Party | $71,563 |
| Loans Receivable | $250,000 |
| Prepaid Expenses and Other Current Assets | $21,448 |
| Crypto Assets Held at Fair Value | $1,026 |
| **Total Current Assets** | **$929,220** |
| Property and Equipment, Net | $2,017 |
| Other Non-Current Assets | $429,428 |
| **Total Assets** | **$1,360,665** |

(1)     Amounts shown in thousands of U.S. Dollars.

(2)     In the above table, assets shown reflect the elimination of intercompany entries within and between the WRS Silo and Dotcom Silo.

(3)     Restricted cash at the WRS Silo is primarily comprised of approximately $250 million in restricted funds at non-Debtor LedgerX.

(4)     Customer custodial fund assets are comprised of fiat customer deposit balances.  **Balances of customer crypto assets deposited were not recorded as assets on the balance sheet and are not presented**.

(5)     Loans receivable of $250 million consists of a loan by Debtor West Realm Shires Inc. to BlockFi Inc. of $250 million in FTT tokens.

(6)     Intangible assets (in the amount of $229 million) are not reflected above.  These consist of values attributable to customer relationships and trade names.

(7)        Goodwill balance (in the amount of $135 million) is not reflected above.

20.        To my knowledge, the WRS Silo Debtors do not have any long-term or funded debt.  The WRS Silo Debtors are expected to have significant liabilities arising from crypto assets deposited by customers through the FTX US platform.  However, such liabilities are not reflected in the financial statements prepared while these companies were under the control of Mr. Bankman-Fried.  The chart below summarizes certain information regarding the WRS Silo's consolidated liabilities as reflected in the September 30, 2022 balance sheet:

| WRS Silo Consolidated Liabilities as of September 30, 2022 | |
| --- | --- |
| *Current Liabilities* | |
| Accounts Payable and Accrued Expenses | $6,014 |
| Accounts Payable, Related Party | $124,221 |
| Custodial Funds Due to Customers | $102,225 |
| Purchase Consideration Payable | — |
| Loan Payable | — |
| Lease Liability, Current | $1,672 |
| Crypto Asset Borrowings at Fair Value | $1,737 |
| **Total Current Liabilities** | **$235,869** |
| Lease Liability, Non-Current | $9,399 |
| Deferred Taxes | $20,185 |
| Contract Liability | $887 |
| SAFE Note, Related Party, Non-Current | $50,000 |
| Other Non-Current Liabilities | — |
| **Total Liabilities** | **$316,014** |

(1)        Amounts shown in thousands of U.S. Dollars.

(2)        In the above table, liabilities shown reflect the elimination of intercompany entries within and between the WRS Silo and Dotcom Silo.

(3)        Customer custodial fund liabilities are comprised of fiat customer deposit balances.  **Balances of customer crypto assets deposited are not presented.**

21.        All Debtors and non-Debtors in the WRS Silo are organized in the State of Delaware, other than non-Debtor FTX Vault Trust Company, which is a South Dakota Trust Company.

### C.    The Alameda Silo

22.    The parent company and primary operating company in the Alameda Silo is Alameda Research LLC, which is organized in the State of Delaware.  Before the Petition Date (as defined below), the Alameda Silo operated quantitative trading funds specializing in crypto assets.  Strategies included arbitrage, market making, yield farming and trading volatility.  The Alameda Silo also offered over-the-counter trading services, and made and managed other debt and equity investments.  In short, the Alameda Silo was a "crypto hedge fund" with a diversified business trading and speculating in digital assets and related loans and securities for the account of its owners, Messrs. Bankman-Fried (90%) and Wang (10%).

23.    Alameda Research LLC prepared consolidated financial statements on a quarterly basis.  To my knowledge, none of these financial statements have been audited.  The September 30, 2022 balance sheet for the Alameda Silo shows $13.46 billion in total assets as of its date.  However, because this balance sheet was unaudited and produced while the Debtors were controlled by Mr. Bankman-Fried, I do not have confidence in it and the information therein may not be correct as of the date stated.

24.    The chart below summarizes certain information regarding the Alameda Silo's consolidated assets as reflected in the September 30, 2022 balance sheet:

| Alameda Silo Consolidated Assets as of September 30, 2022 | |
|---|---|
| *Current Assets* | |
| Cash and Cash Equivalents | $547,964 |
| Restricted Cash | - |
| U.S. Dollar Denominated Stablecoins | - |
| Customer Custodial Funds | - |
| Investments | $3,976,632 |
| Accounts Receivable | $10,845 |
| Accounts Receivable, Related Party | $427,323 |
| Loans Receivable | $41,607 |
| Loans Receivable, Related Party | $4,102,365 |
| Prepaid Expenses and Other Current Assets | $1,083 |
| Crypto Assets Held at Fair Value | $4,084,886 |

-8-

| | |
|---|---|
| **Total Current Assets** | **$13,192,706** |
| Property and Equipment, Net | $26,763 |
| Other Non-Current Assets | $239,696 |
| **Total Assets** | **$13,459,165** |

(1)    Amounts shown in thousands of U.S. Dollars.

(2)    In the above table, intercompany accounts receivable, accounts payable, loans payable, and loans receivable are not presented.

(3)    Related Party Loans Receivable of $4.1 billion at Alameda Research (consolidated) consisted primarily of a loan by Euclid Way Ltd. to Paper Bird Inc. (a Debtor) of $2.3 billion and three loans by Alameda Research Ltd.: one to Mr. Bankman-Fried, of $1 billion; one to Mr. Singh, of $543 million; and one to Ryan Salame, of $55 million.

25.    The chart below summarizes certain information regarding the Alameda

Silo's consolidated liabilities as reflected in the September 30, 2022 balance sheet:

| Alameda Silo Consolidated Liabilities as of September 30, 2022 | |
|---|---|
| *Current Liabilities* | |
| Accounts Payable and Accrued Expenses | $916,305 |
| Accounts Payable, Related Party | $75,900 |
| Custodial Funds Due to Customers | $309,634 |
| Purchase Consideration Payable | - |
| Loans Payable | - |
| Loans Payable, Related Party | $13,762 |
| Lease Liability, Current | - |
| Crypto Asset Borrowings at Fair Value | $3,773,979 |
| **Total Current Liabilities** | **$5,089,579** |
| Lease Liability, Non-Current | - |
| Deferred Taxes | - |
| Contract Liability | - |
| SAFE Note, Related Party, Non-Current | - |
| Other Non-Current Liabilities | - |
| **Total Liabilities** | **$5,089,579** |

(1)    Amounts shown in thousands of U.S. Dollars.

(2)    In the above table, intercompany accounts receivable, accounts payable, loans payable, and loans receivable are not presented.

26.    As mentioned above, Alameda Research LLC is organized in the State of

Delaware.  The other Debtors in the Alameda Silo are organized in Delaware, Korea, Japan, the

British Virgin Islands, Antigua, Hong Kong, Singapore, the Seychelles, the Cayman Islands, the

Bahamas, Australia, Panama, Turkey and Nigeria.

-9-

### D.      The Ventures Silo

27.      The Debtors in the Ventures Silo make and manage private investments. The investments are held in Debtors Clifton Bay Investments, LLC, Clifton Bay Investments Ltd., FTX Ventures Ltd., Island Bay Ventures Inc. and, potentially, affiliated companies.

28.      To my knowledge, Debtors Clifton Bay Investments, LLC and FTX Ventures Ltd. prepared financial statements on a quarterly basis.  The September 30, 2022 balance sheet for Debtor Clifton Bay Investments LLC shows assets with a total value of $1.52 billion as of its date, and the September 30, 2022 balance sheet for FTX Ventures Ltd. shows assets with a total value of $493 million as of its date.  To my knowledge, none of these financial statements have been audited.  Because these balance sheets were unaudited and produced while the Debtors were controlled by Mr. Bankman-Fried, I do not have confidence in them, and the information therein may not be correct as of the date stated.

29.      I have not been able to locate financial statements for Island Bay Ventures Inc.

30.      The chart below summarizes certain information regarding the Ventures Silo's assets as reflected in the September 30, 2022 balance sheets, excluding any assets held by Island Bay Ventures Inc.

| Ventures Silo Consolidated Assets as of September 30, 2022 | | |
| --- | --- | --- |
| | Clifton Bay Investments LLC (consolidated) | FTX Ventures Ltd |
| *Current Assets* | | |
| Cash and Cash Equivalents | $245 | $261 |
| Restricted Cash | - | - |
| U.S. Dollar Denominated Stablecoins | - | - |
| Customer Custodial Funds | - | - |
| Investments | $1,492,856 | $397,861 |
| Accounts Receivable | - | - |
| Accounts Receivable, Related Party | $10,200 | - |

-10-

| | | |
|---|---|---|
| Loans Receivable | $16,810 | - |
| Loans Receivable, Related Party | - | - |
| Prepaid Expenses and Other Current Assets | - | - |
| Crypto Assets Held at Fair Value | - | $95,337 |
| **Total Current Assets** | **$1,520,111** | **$493,459** |
| Property and Equipment, Net | - | - |
| Other Non-Current Assets | - | - |
| **Total Assets** | **$1,520,111** | **$493,459** |

(1)    Amounts shown in thousands of U.S. Dollars.

(2)    In the above table, intercompany accounts receivable, accounts payable, loans payable, and loans receivable are not presented.

31.    The chart below summarizes certain information regarding the Ventures

Silo's liabilities as reflected in the September 30, 2022 balance sheets excluding any liabilities of

Island Bay Ventures Inc.:

| Ventures Silo Consolidated Liabilities as of September 30, 2022 | | |
|---|---|---|
| | Clifton Bay Investments LLC (Consolidated) | FTX Ventures Ltd |
| *Current Liabilities* | | |
| Accounts Payable and Accrued Expenses | $44 | - |
| Accounts Payable, Related Party | $1,519,283 | $129,518 |
| Custodial Funds Due to Customers | - | - |
| Purchase Consideration Payable | - | - |
| Loans Payable | - | - |
| Loans Payable, Related Party | - | $362,915 |
| Lease Liability, Current | - | - |
| Crypto Asset Borrowings at Fair Value | - | - |
| **Total Current Liabilities** | **$1,519,326** | **$492,432** |
| Lease Liability, Non-Current | - | - |
| Deferred Taxes | - | - |
| Contract Liability | - | - |
| SAFE Note, Related Party, Non-Current | - | - |
| Other Non-Current Liabilities | - | - |
| **Total Liabilities** | **$1,519,326** | **$492,432** |

(1)    Amounts shown in thousands of U.S. Dollars.

(2)    In the above table, intercompany accounts receivable, accounts payable, loans payable, and loans receivable are not presented.

(3)    Related Party Accounts Payable at Clifton Bay Investments LLC consists of four related-party balances: one with Debtor Alameda Research Ltd, of $1,400 million; one with Debtor Alameda Research LLC, of $68.6 million; one with Alameda Ventures Ltd, of $38.5 million; and one with Debtor West Realm Shires Services Inc. of $2.25 million.

4892-0827-0654 v.2

(4)   Customer custodial fund liabilities are comprised of fiat customer deposit balances.  **Balances of customer crypto assets deposited are not presented**.

32.   All Debtors in the Ventures Silo are organized in the State of Delaware or the British Virgin Islands.

### E.   The Dotcom Silo

33.   The Dotcom Silo includes FTX.com, the trade name for the business conducted by the parent company in the Dotcom Silo, FTX Trading Ltd., which is organized in Antigua.  FTX.com is a digital asset trading platform and exchange.  It was founded by Messrs. Bankman-Fried, Wang and Singh and commenced operations in May 2019.  The Dotcom Silo also holds certain marketplace licenses and registrations in certain non-U.S. jurisdictions, including the European Union and Japan.  The FTX.com platform is not available to U.S. users.

34.   In addition to its core digital asset exchange, the Dotcom Silo offered an off-exchange portal that enabled users to connect and request quotes for spot digital assets and trade directly.  The portal enabled users to lend their digital assets to other users for spot trading and matched users wanting to borrow with those willing to lend.

35.   The FTX.com platform grew quickly since its launch to become one of the largest cryptocurrency exchanges in the world.  Mr. Bankman-Fried claimed that, by the end of 2021, around $15 billion of assets were on the platform, which according to him handled approximately 10% of global volume for crypto trading at the time.  Mr. Bankman-Fried also claimed that FTX.com, as of July 2022, had "millions" of registered users.  These figures have not been verified by my team.

36.   The Dotcom Silo's unaudited consolidated balance sheet as of September 30, 2022 is the latest balance sheet that was provided to me with respect to the Dotcom Silo.  It shows total assets of $2.25 billion as of September 30, 2022.  Because such balance sheet was

produced while the Debtors were controlled by Mr. Bankman-Fried, I do not have confidence in

it, and the information therein may not be correct as of the date stated.

37.    The chart below summarizes certain information regarding the Dotcom

Silo's consolidated assets as reflected in the September 30, 2022 balance sheet:

| Dotcom Silo Consolidated Assets as of September 30, 2022 | |
|---|---:|
| *Current Assets* | |
| Cash and Cash Equivalents | $483,724 |
| Restricted Cash | $10,188 |
| U.S. Dollar Denominated Stablecoins | $1,140,795 |
| Customer Custodial Funds | – |
| Accounts Receivable | $9,459 |
| Accounts Receivable, Related Party | $188,155 |
| Loans Receivable | $103,949 |
| Prepaid Expenses and Other Current Assets | $42,661 |
| Crypto Assets Held at Fair Value | $659 |
| **Total Current Assets** | **$1,979,590** |
| Property and Equipment, Net | $256,996 |
| Other Non-Current Assets | $22,148 |
| **Total Assets** | **$2,258,734** |

(1)    Amounts shown in thousands of U.S. Dollars.

(2)    The balance sheet for non-Debtor FTX Digital Markets Ltd. is consolidated to Debtor FTX Trading Ltd.'s balance sheet.  The September 30, 2022 Balance Sheet of non-Debtor FTX Digital Markets Ltd. reflects an asset position of $149,336, as follows: Cash and Cash Equivalents ($82,564), Restricted Cash ($10,000), U.S. Dollar Denominated Stablecoins ($63), Related Party Receivables ($45,944), Prepaid Expenses and Other Current Assets ($4,922), Property and Equipment, Net ($5,565) and Other Non-Current Assets ($278) (amounts in thousands of U.S. Dollars).

(3)    Non-debtor FTX Digital Markets Ltd. has a net intercompany accounts payable of $30 million due to entities controlled by Debtor FTX Trading Ltd.

(4)    In the above table, assets shown reflect the elimination of intercompany entries within and between the WRS Silo and Dotcom Silo.

(5)    Customer custodial fund assets are comprised of fiat customer deposit balances.  **Balances of customer crypto assets deposited are not presented.**

(6)    Loans Receivable of $250 million at FTX US consists of a loan to BlockFi Inc. of $250 million in FTT tokens.

(7)    Intangible assets (in the amount of $343 million) are not reflected above.  These consist of values attributable to customer relationships and trade names.

(8)    Goodwill balance (in the amount of $359 million) is not reflected above.

38.    To my knowledge, the Dotcom Silo Debtors do not have any long-term or

funded debt.  The Dotcom Silo Debtors may have significant liabilities to customers through the

FTX.com platform. However, such liabilities are not reflected in the financial statements prepared by these companies while they were under the control of Mr. Bankman-Fried. The chart below summarizes certain information regarding the Dotcom Silo's consolidated liabilities as reflected in the September 30, 2022 balance sheet:

| Dotcom Silo Consolidated Liabilities as of September 30, 2022 | |
| --- | --- |
| *Current Liabilities* | |
| Accounts Payable and Accrued Expenses | $38,970 |
| Accounts Payable, Related Party | $125,626 |
| Custodial Funds Due to Customers | – |
| Purchase Consideration Payable | $26,970 |
| Loan Payable | $124,298 |
| Lease Liability, Current | $23 |
| Crypto Asset Borrowings at Fair Value | $149,723 |
| **Total Current Liabilities** | **$465,610** |
| Lease Liability, Non-Current | – |
| Deferred Taxes | – |
| Contract Liability | – |
| SAFE Note, Related Party, Non-Current | – |
| Other Non-Current Liabilities | $46 |
| **Total Liabilities** | **$465,656** |

(1)    Amounts shown in thousands of U.S. Dollars.

(2)    In the above table, liabilities shown reflect the elimination of intercompany entries within and between the WRS Silo and Dotcom Silo.

(3)    The balance sheet for non-Debtor FTX Digital Markets Ltd. is consolidated to Debtor FTX Trading Ltd.'s balance sheet. The September 30, 2022 Balance Sheet of non-Debtor FTX Digital Markets Ltd. reflects total liabilities in the amount of $1,278, as follows: Accounts Payable and Accrued Expenses ($1,259), Accounts Payable, Related Party ($19) (amounts in thousands of U.S. Dollars).

(4)    Customer custodial fund liabilities are comprised of fiat customer deposit balances. **Balances of customer crypto assets deposited were not recorded as assets on the balance sheet and are not presented.**

39.    The Debtors in the Dotcom Silo are organized in jurisdictions around the world, with the parent company FTX Trading Ltd. organized in Antigua. The Debtors in the Dotcom Silo also own 100% of the equity interests in over a dozen non-Debtor companies.

## II.    <u>EVENTS LEADING TO CHAPTER 11 FILING</u>

40.    The Debtors faced a severe liquidity crisis that necessitated the filing of these Chapter 11 Cases on an emergency basis on November 11, 2022, and in the case of Debtor

West Realm Shires Inc., on November 14, 2022 (collectively, the "Petition Date"). In the days leading up to the Petition Date, certain of the circumstances described in Part III below became known to a broader set of executives of the FTX Group beyond Mr. Bankman-Fried and members of his inner circle. Questions arose about Mr. Bankman-Fried's leadership and the handling of the Debtors' complex array of assets and businesses.

41.     As the situation became increasingly dire, Sullivan & Cromwell and Alvarez & Marsal were engaged to provide restructuring advice and services to the Debtors.

42.     On November 10, 2022, the Securities Commission of the Bahamas (the "SCB") took action to freeze assets of non-Debtor FTX Digital Markets Ltd., a service provider to FTX Trading Ltd. and the employer of certain current and former executives and staff in the Bahamas. Mr. Brian Simms, K.C. was appointed as provisional liquidator of FTX Digital Markets Ltd. on a sealed record. The provisional liquidator for this Bahamas subsidiary has filed a chapter 15 petition seeking recognition of the provisional liquidation proceeding in the Bankruptcy Court for the Southern District of New York.

43.     In addition, in the first hours of November 11, 2022 EST, the directors of non-Debtors FTX Express Pty Ltd and FTX Australia Pty Ltd., both Australian entities, appointed Messrs. Scott Langdon, John Mouawad and Rahul Goyal of KordaMentha Restructuring as voluntary administrators.

44.     At the same time, negotiations were being held between certain senior individuals of the FTX Group and Mr. Bankman-Fried concerning the resignation of Mr. Bankman-Fried and the commencement of these Chapter 11 Cases. Mr. Bankman-Fried consulted with numerous lawyers, including lawyers at Paul, Weiss, Rifkind, Wharton & Garrison LLP, other legal counsel and his father, Professor Joseph Bankman of Stanford Law

School.  A document effecting a relinquishment of control was prepared and comments from Mr.

Bankman-Fried's team incorporated.  At approximately 4:30 a.m. EST on Friday, November 11,

2022, after further consultation with his legal counsel, Mr. Bankman-Fried ultimately agreed to

resign, resulting in my appointment as the Debtors' CEO.  I was delegated all corporate powers

and authority under applicable law, including the power to appoint independent directors and

commence these Chapter 11 Cases on an emergency basis.

45.     Other than the proceedings in the Bahamas and Australia, to my

knowledge, no other Debtor or non-Debtor subsidiary is subject to other insolvency proceedings

at this time.

## III.     ACTION TAKEN SINCE MR. BANKMAN-FRIED'S DEPARTURE

### A.     New Governance Structure

46.     Many of the companies in the FTX Group, especially those organized in

Antigua and the Bahamas, did not have appropriate corporate governance.  I understand that

many entities, for example, never had board meetings.

47.     The following new independent directors (the "Directors") have been

appointed as directors of the primary companies in the FTX Group:

(a)     **WRS Silo:  Mitchell I. Sonkin:**  Mitchell Sonkin is currently a Senior
Advisor to MBIA Insurance Corporation in connection with the
restructuring of the Firm's insured portfolio exposure of the
Commonwealth of Puerto Rico's $72 billion of outstanding debt. He is
also currently Chairman of the Board of the ResCap Liquidating Trust,
successor to ResCap and GMAC Mortgage Corporations. Before joining
MBIA, Mr. Sonkin was a senior partner at the international law firm, King
& Spalding, where he was co-chair of King & Spalding's Financial
Restructuring Group and a member of the firm's Policy Committee. He
has over 40 years of experience in U.S. and international bond issuances,
corporate reorganizations, bankruptcies and other debt restructurings and
has served as a bankruptcy-court-appointed examiner. In particular, he has
played a significant role in numerous municipal, utility, insurance, airline,
healthcare debt and international debt restructurings including the
Anglo/French Euro Tunnel debt reorganization.

-16-

(b) **Alameda Silo:  Matthew R. Rosenberg**:  Mr. Rosenberg is a Partner at Lincoln Park Advisors, a financial advisory firm that he founded in 2014. He has more than 25 years of restructuring, corporate finance, principal investing, operating and board experience. Prior to founding Lincoln Park Advisors, he was a partner at the restructuring and investment banking firm Chilmark Partners, a partner in two private equity funds, the Zell/Chilmark Fund and Chilmark Fund II, the Chief Restructuring Officer of The Wellbridge Company and a member of multiple corporate boards. His restructuring advisory experience includes such companies as OSG, Supermedia, Nortel, Trinity Coal, USG Corporation, JHT Holdings, Inc., Covanta Energy, Sirva, Lodgian, Inc., ContiGroup Companies, Inc., Fruit of the Loom, Ltd. and Recycled Paper Greetings.

(c) **Ventures Silo:  Rishi Jain**:  Mr. Jain is a Managing Director and Co-Head of the Western Region of Accordion, a financial and technology consulting firm focused on the private equity industry. He has more than 25 years of experience supporting management teams and leading finance and operations initiatives in both stressed and distressed environments. Prior to joining Accordion, Mr. Jain was part of Alvarez & Marsal's corporate restructuring and turnaround practice for over 10 years and served in a variety of senior financial operating roles. His most notable assignments have included helping lead the restructuring, liquidation and wind down of Washington Mutual and its predecessor entity, WMI Liquidating Trust. He also navigated the restructuring of Global Geophysical Services in its chapter 11 and eventually the liquidation and wind down in its second chapter 11 filing.

(d) **Dotcom Silo:  The Honorable Joseph J. Farnan (Lead Independent Director)**:  Mr. Farnan served as a United States District Judge for the District of Delaware from 1985 to 2010. He served as Chief Judge from 1997-2001. During his tenure, Mr. Farnan presided over numerous bench and jury trials involving complex commercial disputes. Prior to his appointment to the federal bench, Mr. Farnan was appointed to several positions in local, state and the federal government returning to private practice in 2010 with the formation of Farnan LLP, a law firm focused on complex commercial matters, including chapter 11 proceedings, securities litigation, antitrust litigation and patent litigation. Additionally, Mr. Farnan serves as an arbitrator, mediator, independent director and trustee of businesses contemplating or filing chapter 11 bankruptcy.

(e) **Dotcom Silo:  Matthew A. Doheny**:  Mr. Doheny is President of North Country Capital LLC, an advisory and investment firm focused on challenging advisory assignments and investing private investment portfolios in special situation opportunities. He has held this position since January 2011. Mr. Doheny has served on the board of directors or as Chief Restructuring Officer of numerous stressed and distressed companies, including Yellow Corp., MatlinPatterson, GMAC Rescap and Eastman

-17-

Kodak. He was also Managing Director and Head of Special Situations Investing at HSBC Securities Inc. from 2015 to 2017. Previously, Mr. Doheny served as Portfolio Manager in Special Situations at Fintech Advisory Inc. from 2008 to 2010 and as Managing Director of the Distressed Products Group at Deutsche Bank Securities Inc. from 2000 to 2008.

48.     The appointment of the Directors will provide the FTX Group with appropriate corporate governance for the first time.

49.     The Directors intend to hold joint board meetings of the Debtors on matters of common interest, including (a) the implementation of controls, (b) asset protection and recovery, (c) the investigation into claims against the founders and third parties, (d) cooperation with insolvency proceedings of subsidiary companies in other jurisdictions and (e) the maximization of value for all stakeholders through the eventual reorganization or sale of the Debtors' complex array of businesses, investments and property around the world.  The Directors will implement appropriate procedures for the resolution of any conflicts of interest among the Silos and, if necessary, within the Silos as the case progresses, including the potential engagement of independent counsel to represent various Debtors in the resolution of intercompany claims against other Debtors.  I expect there to be a multitude of intercompany claims that will benefit from fair resolution under the rules and conventions of U.S. chapter 11 practice in the District of Delaware for complex, multi-Debtor cases.  For the time being, my belief is that all stakeholders are best served by a coordinated and centralized administration.

## B.     Cash Management

50.     The FTX Group did not maintain centralized control of its cash.  Cash management procedural failures included the absence of an accurate list of bank accounts and account signatories, as well as insufficient attention to the creditworthiness of banking partners

around the world.  Under my direction, the Debtors are establishing a centralized cash management system with proper controls and reporting mechanisms.

51.     During these Chapter 11 Cases, cash that the Debtors are able to locate and transfer to the United States without adverse consequences, including substantially all proceeds of the global reorganization effort, will be deposited into financial institutions in the United States that are approved depository institutions in accordance with the U.S. Trustee Guidelines.  Each Silo will have a centralized cash pool, and the Debtors will implement appropriate arrangements for allocating costs across the various Silos and Debtors.  The Debtors expect to file promptly a Cash Management Motion that will describe the new cash management system in more detail.

52.     Because of historical cash management failures, the Debtors do not yet know the exact amount of cash that the FTX Group held as of the Petition Date.  The Debtors are working with Alvarez & Marsal to verify all cash positions.  To date, it has been possible to approximate the following balances as of the Petition Date based on available books and records:

| Entity | Unrestricted Cash | Custodial Cash | Other Restricted Cash | Total Cash |
|---|---|---|---|---|
| *Debtor Entities* | | | | |
| FTX EU Ltd | $1,250,848 | $47,925,646 | $175,832 | $49,352,327 |
| West Realm Shires Services Inc. | $32,233,606 | $14,596,119 | $1,270,700 | $48,100,425 |
| West Realm Shires Inc. | $35,411,619 | - | - | $35,411,619 |
| Paper Bird Inc | $7,906,893 | - | - | $7,906,893 |
| FTX Exchange FZE | $1,812,563 | - | $4,000,000 | $5,812,563 |
| Ledger Holdings Inc. | $4,098,480 | - | - | $4,098,480 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | $36,682 | $3,069,526 | - | $3,106,208 |
| FTX Europe AG | $2,979,584 | - | - | $2,979,584 |
| FTX Trading Ltd | $375,726 | $2,600,324 | - | $2,976,050 |
| Maclaurin Investments Ltd. | $2,529,814 | - | - | $2,529,814 |
| Blockfolio, Inc. | $2,396,067 | - | - | $2,396,067 |
| Ledger Prime LLC | $2,230,765 | - | - | $2,230,765 |
| Crypto Bahamas LLC | $900,000 | - | - | $900,000 |
| FTX Ventures Ltd | $779,542 | - | - | $779,542 |
| West Realm Shires Financial Services Inc. | $576,831 | - | - | $576,831 |
| FTX Lend Inc. | $484,738 | - | - | $484,738 |
| FTX Trading GmbH | $146,059 | - | - | $146,059 |
| FTX Switzerland GmbH | $16,799 | - | - | $16,799 |

| Entity | Unrestricted Cash | Custodial Cash | Other Restricted Cash | Total Cash |
|---|---|---|---|---|
| **Total Debtor Entities** | **$96,166,614** | **$68,191,615** | **$5,446,532** | **$169,804,762** |
| *Non-Debtor Entities* | | | | |
| LedgerX LLC | $13,644,269 | $24,103,085 | $265,603,056 | $303,350,409 |
| FTX Digital Markets Ltd | - | - | $49,999,600 | $49,999,600 |
| Embed Clearing LLC. | - | - | $29,978,776 | $29,978,776 |
| FTX Philanthropy Inc | $10,877,387 | - | - | $10,877,387 |
| Embed Financial Technologies Inc | $395,371 | - | - | $395,371 |
| **Total Non-Debtor Entities** | **$24,917,027** | **$24,103,085** | **$345,581,432** | **$394,601,543** |
| **Total** | **$121,083,641** | **$92,294,700** | **$351,027,964** | **$564,406,305** |

53.     The Debtors have been in contact with banking institutions that they believe hold or may hold Debtor cash.  These banking institutions have been instructed to freeze withdrawals and alerted not to accept instructions from Mr. Bankman-Fried or other signatories. Proper signature authority and reporting systems are expected to be arranged shortly.

54.     Effective cash management also requires liquidity forecasting, which I understand was also generally absent from the FTX Group historically.  The Debtors are putting in place the systems and processes necessary for Alvarez & Marsal to produce a reliable cash forecast as well as the cash reporting required for Monthly Operating Reports under the Bankruptcy Code.

## C.     Financial Reporting

55.     The FTX Group received audit opinions on consolidated financial statements for two of the Silos – the WRS Silo and the Dotcom Silo – for the period ended December 31, 2021.  The audit firm for the WRS Silo, Armanino LLP, was a firm with which I am professionally familiar.  The audit firm for the Dotcom Silo was Prager Metis, a firm with which I am not familiar and whose website indicates that they are the "first-ever CPA firm to officially open its Metaverse headquarters in the metaverse platform Decentraland."[4]

---

[4]     https://pragermetis.com/news/prager-metis-opens-first-ever-cpa-firm-metaverse/.

56.     I have substantial concerns as to the information presented in these audited financial statements, especially with respect to the Dotcom Silo.  As a practical matter, I do not believe it appropriate for stakeholders or the Court to rely on the audited financial statements as a reliable indication of the financial circumstances of these Silos.

57.     The Debtors have not yet been able to locate any audited financial statements with respect to the Alameda Silo or the Ventures Silo.

58.     The Debtors are locating and securing all available financial records but expect it will be some time before reliable historical financial statements can be prepared for the FTX Group with which I am comfortable as Chief Executive Officer.  The Debtors do not have an accounting department and outsource this function.

### D.     Human Resources

59.     The FTX Group's approach to human resources combined employees of various entities and outside contractors, with unclear records and lines of responsibility.  At this time, the Debtors have been unable to prepare a complete list of *who* worked for the FTX Group as of the Petition Date, or the terms of their employment.  Repeated attempts to locate certain presumed employees to confirm their status have been unsuccessful to date.

60.     Nevertheless, there is a core team of dedicated employees at the FTX Group who have stayed focused on their jobs during this crisis and with whom I have established appropriate lines of authority and working relationships.  The Debtors continue to review personnel issues but I expect, based on my experience and the nature of the Debtors' business, that a large number of employees of the Debtors will need to continue to work for the Debtors for the foreseeable future in order to establish accountability, preserve value and maximize stakeholder recoveries after the departure of Mr. Bankman-Fried.  As Chief Executive Officer, I am thankful for the extraordinary efforts of this group of employees, who despite difficult

-21-

personal circumstances, have risen to the occasion and demonstrated their critical importance to the Debtors.

61.     The Debtors are preparing one or more motions to address issues relating to continuing employees and contractors.  The Debtors also may hire new employees and officers with turnaround or other relevant experience in core functions where I determine that new leadership is required.  I anticipate that the Debtors will be able to file these motions in the coming days.

### E.     Disbursement Controls

62.     The Debtors did not have the type of disbursement controls that I believe are appropriate for a business enterprise.  For example, employees of the FTX Group submitted payment requests through an on-line 'chat' platform where a disparate group of supervisors approved disbursements by responding with personalized emojis.

63.     In the Bahamas, I understand that corporate funds of the FTX Group were used to purchase homes and other personal items for employees and advisors.  I understand that there does not appear to be documentation for certain of these transactions as loans, and that certain real estate was recorded in the personal name of these employees and advisors on the records of the Bahamas.

64.     The Debtors now are implementing a centralized disbursement approval process that reports to me as Chief Executive Officer.

### F.     Digital Asset Custody

65.     The FTX Group did not keep appropriate books and records, or security controls, with respect to its digital assets.  Mr. Bankman-Fried and Mr. Wang controlled access to digital assets of the main businesses in the FTX Group (with the exception of LedgerX, regulated by the CFTC, and certain other regulated and/or licensed subsidiaries).  Unacceptable

management practices included the use of an unsecured group email account as the root user to access confidential private keys and critically sensitive data for the FTX Group companies around the world, the absence of daily reconciliation of positions on the blockchain, the use of software to conceal the misuse of customer funds, the secret exemption of Alameda from certain aspects of FTX.com's auto-liquidation protocol, and the absence of independent governance as between Alameda (owned 90% by Mr. Bankman-Fried and 10% by Mr. Wang) and the Dotcom Silo (in which third parties had invested).

66.    The Debtors have located and secured only a fraction of the digital assets of the FTX Group that they hope to recover in these Chapter 11 Cases.  The Debtors have secured in new cold wallets approximately $740 million of cryptocurrency that the Debtors believe is attributable to either the WRS, Alameda and/or Dotcom Silos.  The Debtors have not yet been able to determine how much of this cryptocurrency is allocable to each Silo, or even if such an allocation can be determined.  These balances exclude cryptocurrency not currently under the Debtors' control as a result of (a) at least $372 million of unauthorized transfers initiated on the Petition Date, during which time the Debtors immediately began moving cryptocurrency into cold storage to mitigate the risk to the remaining cryptocurrency that was accessible at the time, (b) the dilutive 'minting' of approximately $300 million in FTT tokens by an unauthorized source after the Petition Date and (c) the failure of the co-founders and potentially others to identify additional wallets believed to contain Debtor assets.

67.    In response, the Debtors have engaged forensic analysts to identify potential Debtor assets on the blockchain, cybersecurity professionals to identify the parties responsible for the unauthorized transactions on and after the Petition Date and investigators to begin the process of identifying what may be very substantial transfers of Debtor property in the

days, weeks and months prior to the Petition Date. The Debtors' team includes business, accounting, forensic, technical and legal resources that I believe are among the best in the world at these activities. It is my expectation that the Debtors will require assistance from the Court with respect to these matters as the investigation and these Chapter 11 Cases continue.

68.     Although the investigation has only begun and must run its course, it is my view based on the information obtained to date, that many of the employees of the FTX Group, including some of its senior executives, were not aware of the shortfalls or potential commingling of digital assets. Indeed, I believe some of the people most hurt by these events are current and former employees and executives, whose personal investments and reputations have suffered. These are many of the same people whose work will be necessary to ensure the maximization of value for all stakeholders going forward.

### G.     Custody of Other Assets and Investments

69.     The FTX Group had billions in investments other than cryptocurrency, as suggested above in the descriptions of the four Silos. However, the main companies in the Alameda Silo and the Ventures Silo did not keep complete books and records of their investments and activities.

70.     The Debtors are creating a balance sheet and other financial statements for the Alameda Silo and the Ventures Silo as of the Petition Date. The Debtors are doing so from the 'bottom-up' by using the records of cash transactions at the Debtors, and also are reviewing various third-party sources to locate investments.

### H.     Information and Retention of Documents

71.     One of the most pervasive failures of the FTX.com business in particular is the absence of lasting records of decision-making. Mr. Bankman-Fried often communicated

-24-

by using applications that were set to auto-delete after a short period of time, and encouraged employees to do the same.

72.     The Debtors are writing things down.  The investigative effort underway is led by myself and a team at Sullivan & Cromwell that reports directly to me, including a former Director of Enforcement at the SEC, a former Director of Enforcement at the CFTC, and a former Chief of the Complex Frauds and Cybercrime Unit of the United States Attorney's Office for the Southern District of New York.  I regard ensuring the comprehensiveness, professionalism and integrity of this investigation as an essential part of my job as Chief Executive Officer.

73.     Transparency with regulators around the world is an important objective for the Debtors.  Since Friday, the Debtors have been in contact with dozens of regulators throughout the United States and around the world, and will continue to be as these cases continue.

## I.     Regulated and Licensed Subsidiaries

74.     The FTX Group included regulated or licensed subsidiaries in many jurisdictions that may or may not have valuable going concern franchises.  The Debtors will soon be taking efforts to preserve these subsidiary businesses to the extent practicable under the circumstances.  The Debtors also are engaging a leading investment bank to assist the Debtors in valuing these businesses and potentially conducting sales efforts.

## J.     Access to Data

75.     The Debtors have cryptocurrency, digital assets and other critically sensitive data in repositories that have been the subject of unauthorized attempts to access.  The Debtors have implemented certain defensive measures.  The Debtors have been advised that attempts to access this property of the estate may create a risk of its loss to unauthorized persons.

-25-

The Debtors expect to seek special relief from the Court to authorize measures to access this information as safely as possible.  The Debtors are unable to create a list of their top 50 creditors that includes customers without access to the data repositories at issue, and may seek related relief from the Court as well if the problem cannot be promptly resolved.

### K.        Corporate Communications

76.        Finally, and critically, the Debtors have made clear to employees and the public that Mr. Bankman-Fried is not employed by the Debtors and does not speak for them.  Mr. Bankman-Fried, currently in the Bahamas, continues to make erratic and misleading public statements.  Mr. Bankman-Fried, whose connections and financial holdings in the Bahamas remain unclear to me, recently stated to a reporter on Twitter:  "F*** regulators they make everything worse" and suggested the next step for him was to "win a jurisdictional battle vs. Delaware".

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  November 17, 2022                          */s/ John J. Ray III*_____
                                                                      Name:  John J. Ray III
                                                                      Title:  Chief Executive Officer

-26-

## Exhibit A

**Summary of the Silos and Indicative Assets**

# FOUR SILOS FOR RECOVERY PURPOSES



## **Exhibit B**

**Preliminary Corporate Structure Chart**

# PRELIMINARY ORGANIZATIONAL CHART

Last updated: Draft of November 17, 2022



\* Percentages directly held by each of Sam Bankman-Fried, Gary Wang and Nishad Singh in individual entities varies.

\*\* Indicates non-operational subsidiary entity.